WATTS (SUYDAM v.). See Case No. 13,-658.

WATTS (UNION PAC. R. CO. v.). See Case No. 14,385.

WATTS (UNITED STATES v.). See Case No. 16,653.

## Case No. 17,295.

### WATTS et al. v. WADDLE et al.

[1 McLean, 200.] [1]

Circuit Court, D. Ohio. Dec., 1833. [2]

CONTRACT TO CONVEY LAND — TIME OF PERFORMANCE—PENDING LITIGATION—SPECIFIC PERFORMANCE — PARTIES TO DECREE — DEED BY COMMISSIONER—EFFECT.

1. A contract to convey a certain tract of land so soon as a suit then pending for the title shall be decided, gives to the party that agrees to convey all the time necessary to close the litigation in all the forms it may assume.

2. Unforeseen circumstances and embarrassments may excuse the performance, at the day, if the party act in good faith.

3. The husbands of femes covert, where the title is sought through the wife, must be made parties, or the title decreed will be defective.

4. And so where there is a dower interest outstanding.

5. The decree of title in one state to lands in another state cannot operate so as to vest the legal title.
[Cited in Lindley v. O'Reilly, 50 N. J. Law, 642, 15 Atl. 382.]

6. The court will never compel a party, under a contract for a good and operative title, to receive one that is defective.
[Cited in Tiffin v. Shawhan, 43 Ohio St. 184, 1 N. E. 585.]

7. The statute which gives effect to a deed executed without the state, if made in pursuance of the law of the country, refers to deeds of the party.

8. A decree in Kentucky, for the conveyance of land in Ohio, though executed by a commissioner, under the statute, in pursuance of the decree can give no title.
[Cited in Pulliam v. Pulliam, 10 Fed. 47.]

In equity.

Mr. Creighton and Mr. Bond, for complainants.

Mr. Leonard, for defendants.

McLEAN, Circuit Justice. The object of this bill is the specific execution of a contract

[1] [Reported by Hon. John McLean, Circuit Justice.]
[2] [Modified in 6 Pet. (31 U. S.) 389.]

of sale of certain outlots and other land near the town of Chillicothe, between John Watts and William Lamb. Watts bound himself to make to Lamb a general warrantee deed by the 1st February, 1816, "or as soon as a final decree should be rendered in the circuit court of the United States, in a suit against Nathaniel Massie and others. At the time of the contract Lamb, or his assignee, [William] Waddle, was in possession of the land. The suit against Massie, which is referred to in the contract, was brought to carry into effect a decree of the circuit court of the United States, for the district of Kentucky, and which had been affirmed by the supreme court, in which Massie was decreed to convey to Watts all the land covered by a survey of O'Neal's entry, No. 509, although within entries Nos. 503 and 2462, amounting to 1000 acres; and Watts was required to convey 1000 acres which were within the calls of entry 509. These conveyances do not appear to have been executed or either of them. In 1818 Watts obtained a final decree in the circuit court of Ohio, against Massie for the land in controversy. Lamb was also a defendant in this suit. This decree was appealed to the supreme court, which affirmed the decree of the circuit court. It was discovered that no patent had issued to Massie for the land, and on application, a patent was issued to Watts the 1st March, 1826. But a patent was issued to the heirs of Powell the 4th November, 1818, on entry 503, which covered a part of the same land. Lamb assigned the contract to Waddle who, in 1824 brought an action against Watts, on the contract for damages, and at July term, 1826, recovered a judgment for seven thousand seven hundred and forty-five dollars and fifty cents. On the 3rd July before the judgment, Watts tendered a deed to Waddle for the land, which he refused to receive. Watts then filed this bill which prays for an injunction, and for general relief.

It is insisted that under the circumstances, the court should enjoin the judgment at law, and compel the defendant to accept of the deed tendered. The delays which have occurred, it is said, are not chargeable to Watts, but to circumstances beyond his control; and which he did not foresee and could not anticipate. That he has acted in good faith and with reasonable diligence, in using legal means to obtain a title; and that he tendered a conveyance under the contract as soon as he had the power to execute it. Fraud is not justly imputable to the complainant, nor does he seem to have been guilty of any serious laches in the prosecution of suits to coerce a title. When the contract was entered into, Lamb knew, and indeed it was substantially stated in the contract, that the complainant expected to receive the legal title, through the final decree in the suit then pending against Massie and others. And when it was discovered that the legal title was not vested in Massie, and that no patent had issued on the entry and survey under which he claimed, the complain-

ant obtained the patent in his own name. But a patent to Powell's heirs had been previously issued on a different entry and survey; which covered a considerable part of the land specified in the contract. To divest this legal right Watts instituted a suit against Powell's heirs in the circuit court of the United States, for the district of Kentucky; and obtained a final decree against them for the land. Under the authority of this decree and of the statute of Kentucky, a commissioner, appointed by the court, executed a conveyance, in behalf of Powell's heirs, for the land, in the fall of 1826. And it is contended, though not satisfactorily proved, that after this decree Watts again tendered a deed to Waddle. Although many years elapsed from the date of the contract, to the tender of the deed, yet the delay is accounted for by the embarrassed state of the title; and the litigation in which Watts was consequently involved; and we are inclined to think, that a sufficient excuse for the delay is found for him in these circumstances.

But it is insisted, if the delay shall be accounted for and excused, there are essential defects in the title tendered. If this objection be well founded, it must be decisive of the present case. For a court of chancery will not compel a party, under a contract for a good and operative deed, to receive one that is essentially defective. The objections urged against this title are: 1. That a suit is now pending in the general court of Kentucky, by one Henry Banks, who asserts a right to the warrant under which Watts claims. 2. That the decree against Powell's heirs is defective, it being against femes covert whose husbands are not made parties to the bill, and that the dower of the widow of Powell, who is still living, has never been divested. 3. That the decree against Powell's heirs does not give a legal title to Watts.

The bill filed by Henry Banks in the general court of Kentucky, in which he sets up a right to the warrant on which the entry claimed by Watts was made, and which he alleges was fraudulently transferred to Watts, who had full knowledge of his claim, appears to be still pending in that court. Both parties have been negligent in bringing the case to a hearing. The process having been served on Watts, the general court have jurisdiction of the case, and may enforce their decree in personam. It is difficult for this court, therefore, in an enquiry respecting the embarrassments on this title to disregard the pendency of this suit, or to say that the facts asserted in the bill, uncontradicted as they stand, do not cast a shade upon the right of Watts.

The second objection seems also to be well taken. The husbands of the femes covert referred to are not made parties in the case against Powell's heirs; and consequently their interests could not be prejudiced by the decree. Nor does this decree impair or in any way affect injuriously, any right which the widow of Powell may have in the premises.

But the third objection, that the decree of the court in Kentucky does not vest in Watts the legal title, is conclusive. No decree of a court in a foreign jurisdiction, can operate as a conveyance of land in Ohio. The mode by which real estate must be transferred, either by act of the parties or by operation of law, is fixed by the laws of the respective states. By the statute of Ohio, a decree is made to operate as a conveyance; but this refers, exclusively, to her own tribunals. Under the decree in Kentucky, a commissioner conveyed in behalf of Powell's heirs; and it is insisted that this is tantamount to a conveyance executed by the heirs themselves. This may be the effect of the conveyance in Kentucky; and if the land attempted to be conveyed, had been situated in that state, the deed of the commissioner would have transferred the title, as fully and completely as it was vested in the heirs. This act of the commissioner is essentially connected with the decree, and constitutes a part of it. The commissioner is appointed by the court, and his acts, to be valid, must have the express sanction of the court. This statute of Kentucky can have no greater effect on title in another state, than the statute of Ohio, which provides that the decree itself shall operate as a conveyance. They are only different modes by which the same object is attained; and their operation, as it regards title, is limited to the jurisdiction in which the power is exercised. The statute of Ohio, which makes a deed executed according to the laws of the state in which it is made, good and effectual to convey land in this state, refers exclusively to conveyances executed by the party. It can have no application, as contended, to a deed executed by a commissioner under a decree, as in this case.

These defects in the deed tendered are so radical, as to render it as a legal conveyance, inoperative. And on this ground the bill of the complainants must be dismissed with costs.

This decree was affirmed, as to the specific execution of the contract, on an appeal to the supreme court: but that court considered that the representatives of the complainant, Watts, having deceased, were entitled to certain rents and profits under the general prayer for relief, although this claim was not asserted in the circuit court; and the decree was so far opened as to admit a compensation for the rents and profits. 6 Pet. [31 U. S.] 389.