## DAVID LINDLEY v. CATHERINE O'REILLY.

1. In cases of contract, trust or fraud, the equity courts of one state or country having jurisdiction of the parties, are competent to entertain a suit for specific performance, or to establish a trust, or for a conveyance, although the contract, trust or fraudulent title pertains to lands in another state or country. But a decree in such a suit imposes a mere personal obligation, enforceable by injunction, attachment or like process, against the person, and cannot operate upon lands in another jurisdiction to create, transfer or vest a title.

2. This rule rests upon the principle that the courts of one state or country are without jurisdiction over title to lands in another state or country. The clause of the federal constitution which requires full faith and credit to be given in each state to the records and judicial proceedings of every other state, is subordinate to this rule, and applies to the records and proceedings of the courts only so far as they have jurisdiction.

3. Where a testator, in the disposition of his estate, imposes on his executor trusts to be executed or duties to be performed which require for their execution or performance an estate in his lands or a power of sale, the executor will take by implication such an estate or power as will enable him to execute the trusts or perform the duties devolved upon him.

4. F., by his will, disposed of all his estate, real, personal and mixed, upon certain trusts for the benefit of his wife during her life, and after her death for the establishment of a charitable institution, and constituted the Right Reverend J. F. W., Roman Catholic Bishop of Phila-

Lindley v. O'Reilly.

delphia, and his successors in office, executors. He provided that his widow should, during her lifetime, have the interest of all his estate, real, personal and mixed, and that if the interest arising annually should not be sufficient to maintain her, his executor or his successors should give her, annually, a sufficient amount of the principal to maintain her according to her station in life. For the establishment of the charitable institution, the testator directed his executor or successors in office to purchase a suitable farm for that purpose, and that the balance of the money arising out of his estate, if any, after the death of his wife and the purchase of the farm, should be appropriated to the erection of suitable buildings for the institution, and any surplus remaining should be put out at interest and applied for improvements. The will contained no devise to the executor, in express words, nor any express grant of power to sell lands. *Held,*

1. That the executor took, by implication, a fee in the testator's lands, or at least a power of sale, and that in either event his deed would convey the legal title.

2. That if conveyance by the executor was prematurely made, or for an inadequate consideration in breach of trust, the title would nevertheless be good at law, the relief being in equity and at the instance only of the *cestuis que trust,* whose interests were prejudiced thereby.

5. The act of March 17th, 1882, (*Pamph. L., p.* 12), which provides for recording foreign wills for the purpose of making title to lands in this state and making the transcripts of such record legal evidence of title, applies only to foreign wills that have been admitted to probate in the state from which the copy of the will has been exemplified. Probate in the foreign jurisdiction, as evidence of the *factum* of the will, is a condition precedent to its being made a record in this state, and that jurisdictional fact must appear by the certificate transmitted with the copy of the will. An affidavit that the will has been admitted to probate in the state from which the copy was exemplified, is not competent to establish that fact.

6. Where the object of making such a will a record in this state is for the purpose of making title to lands, the record exemplified from another state must contain the proofs taken on the probate, that it may appear that the will was made and executed in the manner and with the formalities prescribed by the statute of this state for devises of lands.

On writ of error to the Supreme Court.

This was an action of ejectment brought by Catherine O'Reilly against Lindley, the plaintiff in error, to recover lands situate in the county of Atlantic. By direction of the judge a verdict was given for the plaintiff. This writ of error

brings up exceptions to that direction, and also errors assigned upon the admission of evidence.

For the plaintiff in error, *Thomas B. Harned* and *D. J. Pancoast.*

For the defendant in error, *Peter L. Voorhees* and *James H. O'Reilly.*

The opinion of the court was delivered by

DEPUE, J.    Patrick O'Reilly died in 1881.    In his lifetime he was seized of a tract of land in the county of Atlantic, in this state, the subject of controversy in this suit.    By his will, dated December 5th, 1877, proved before the surrogate of Atlantic county July 5th, 1881, and letters testamentary granted thereon, he devised his entire estate to the plaintiff, his wife, for life.    Exception was taken to the admission of a certified copy of this will, but the printed case does not contain a full copy of the will, nor does any assignment of error touch the competency of this evidence.    It must be assumed that this will was duly executed to devise lands under the laws of this state, and that the same was duly probated to make a certified copy competent evidence.    On this presentation of title, the plaintiff would have been entitled to a verdict.

The obstacle in the way of the plaintiff's recovering, in virtue of her title under her husband's will, arose from a deed made by O'Reilly and wife to one Henry Francis Felix, on the 14th of January, 1861.    This deed purported to be an absolute conveyance, in fee simple, for the consideration of $18,000.    To sustain title under her husband's will, it was necessary for the plaintiff to overcome or extinguish the legal title thus conveyed.

The plaintiff contended, at the trial, that the deed to Felix was, in fact, a mortgage, and that the debt or liability for which it was given was paid and satisfied, and that on the discharge of the obligation for which the conveyance was made, the estate of the mortgagee was extinguished.    In a trial at

law it is not competent to show, by oral testimony, that an absolute deed was, in reality, a mortgage. In our judicial system, the jurisdiction to convert an absolute deed into a mortgage, by parol evidence, is exclusively in the equity courts. The competency and effect of the evidence produced by the plaintiff for this purpose, are the issues raised by 'the bill of exceptions and assignments of error.

Felix died in 1866. By his will he gave all his property for the benefit of his wife, Alicia Kate, and a charitable society known as the Sisters of the Immaculate Heart of Mary, and made the Right Reverend James F. Wood, Roman Catholic Bishop of Philadelphia, executor.

Felix, at the time of his death, resided at Reading, in the county of Berks, Pennsylvania. On the 4th of December, 1867, O'Reilly filed a bill of equity in the Court of Common Pleas of the county of Berks, against the Right Reverend James F. Wood, executor of the last will and testament of Henry F. Felix, Alicia Kate Felix, widow of said Henry F. Felix, and the religious order of the Sisters of the Immaculate Heart of Mary.

The bill set out, that the Right Reverend James F. Wood was a resident of Philadelphia, that Alicia Kate Felix resided in Reading, and that the religious order of the Sisters of the Immaculate Heart of Mary was a society established in Reading. It charged that the deed of conveyance made by O'Reilly to Felix was, in legal effect, a mortgage; that the same was made as security to indemnify Felix against his liability on certain promissory notes made by O'Reilly and endorsed by Felix, and discounted by the Farmers' Bank of Reading, and under protest, and that, subsequently, the said notes were fully paid and satisfied by the said O'Reilly; that the said Felix sustained no loss or damage in consequence of the said endorsements, and prayed a reconveyance of the legal title. The defendants named in the bill appeared and filed an answer. By consent of parties an examiner was appointed January 27th, 1868, who filed his report November 1st, 1869, and in September, 1880, the case was brought on for hearing, by con-

sent, on the bill, answer and report of the examiner; and on the 20th of September, 1880, a decree was signed, in which, after reciting that the court being satisfied that the allegations of the plaintiff's bill were correct and true, and that all the notes endorsed by Felix, and liabilities incurred by him for O'Reilly, had been, by O'Reilly, fully paid, discharged and satisfied, it was ordered and decreed that the Right Reverend James F. Wood, executor of the last will and testament of deceased, should execute and deliver to Patrick O'Reilly, a deed of reconveyance of the premises in fee simple.

All the parties to the suit resided in Pennsylvania. The Pennsylvania court had jurisdiction of the parties and also of the subject-matter of the suit. The contested problem is the effect of its decree upon the title to lands in this state. If the decree can affect the title to lands in this state, it extinguished the Felix title without a reconveyance, for in this state a mortgage is regarded as a mere security for the debt or liability for which it is given, and payment or satisfaction of the debt or liability discharges the mortgage, and revests the mortgaged premises in the mortgagor without a reconveyance. *Shields* v. *Lozear*, 5 *Vroom* 496; *Kloepping* v. *Stellmacher*, 7 *Id.* 176; *Jackson* v. *Terrill*, 10 *Id.* 329; *Schalk* v. *Kingsley*, 13 *Id.* 32.

Ever since *Penn* v. *Lord Baltimore*, 1 *Ves. Sr.*, 444, it has been established law that in cases of contract, trust or fraud, the equity courts of one state or country, having jurisdiction of the parties, are competent to entertain a suit for specific performance, or to establish a trust, or for a conveyance, although the contract, trust or fraudulent title pertains to lands in another state or country. The principle upon which this jurisdiction rests is, that chancery, acting *in personam* and not *in rem*, holds the conscience of the parties bound without regard to the *situs* of the property. It is a jurisdiction which arises when a special equity can be shown which forms a ground for compelling a party to convey or release, or for restraining him from asserting a title or right in lands so situated, and is strictly limited to those cases in which the relief

decreed can be obtained through the party's personal obedi-. ence. If it went beyond that the assumption of jurisdiction would not only be presumptious but ineffectual. *Westlake on International Law*, 57, 58. The decree in a suit of this aspect imposes a mere personal obligation, enforceable by injunction, attachment or like process, against the person, and cannot operate *ex proprio vigore* upon lands in another jurisdiction to create, transfer or vest a title. The cases on this subject are numerous. They are collected in the note to *Penn* v. *Lord Baltimore*, 2 *Lead. Cas. in Eq.* 1806, (923); *Brett's Lead. Cas. in Eq.* 254; *Ewing* v. *Orr Ewing*, 9 *App. Cas.* 34; *Norris* v. *Chambers*, 29 *Beav.* 246; *Massie* v. *Watts*, 6 *Cranch* 148; *Wood* v. *Warner*, 2 *McCart.* 81; *Vaughan* v. *Barkley*, 6 *Whart.* 392. In *Davis* v. *Headley*, 7 *C. E. Gr.* 115, the complainant obtained a decree in the Circuit Court of Kentucky against Headley, that a conveyance of lands in New Jersey, made by the complainant, should be rescinded and set aside, the possession restored and the defendant enjoined from setting up the conveyance. He then filed a bill in the Court of Chancery of this state to enforce the decree. The jurisdiction of the parties and of the subject-matter of that suit was undisputed. The bill to enforce the decree was nevertheless dismissed. Chancellor Zabriskie, in dismissing the bill, declared that it was a well settled principle of law in the decisions of England and of this country, and acquiesced in by the jurists of all civilized nations, that immovable property is exclusively subject to the laws and jurisdiction of the courts of the state or nation in which it is located, and that no other laws or courts could affect it. He added, " I find no case in which a statute, judgment or proceeding in one country has been held to affect such property in another country or beyond the jurisdiction of the sovereign or court making the statute or decree." After referring to Penn *v.* Lord Baltimore, and the cases in which decrees for specific performance of contracts relating to lands without their jurisdiction were made, the learned Chancellor said, " But in these cases it is admitted, as it was by Lord Hardwicke, that these

decrees could not affect the land, but could only be enforced where the court had jurisdiction of the person of the defendant and thus compel him to execute the conveyance. *In such cases it is the conveyance and not the decree that has the effect.*"

A similar precedent in the federal courts enforced the same view. *Watts* v. *Waddle et al.,* 1 *McLean* 200 *; S. C. on appeal,* 6 *Peters* 389. Lands situate in Ohio were covered by two patents, one issued to Powell and the other to Watts. To remove this cloud upon his title, Watts commenced a suit against Powell's heirs in the Circuit Court for the District of Kentucky, and obtained a decree sustaining his title. The court had jurisdiction of the parties. By the decree the defendants were required to convey the premises to the complainant. A statute of Kentucky authorized the court, in case the defendant in such a suit failed to convey, to appoint a commissioner to make conveyance. By the decree a commissioner was appointed, and, no conveyance having been made by the parties, a deed was executed by the commissioner. A suit afterwards brought in the Federal Circuit Court of Ohio, brought in question the effect of the decree of the Kentucky court, and of the commissioner's deed in execution of it, upon the title to the lands. The court held that neither the decree nor the commissioner's deed vested the legal title in the complainant. In the opinion in the Supreme Court, Mr. Justice McLean said: " The most decisive objection to the decree against Powell's heirs is, that it does not vest the legal title in Watts. A decree cannot operate beyond the state in which the jurisdiction is exercised. It is not in the power of one state to prescribe the mode by which real property shall be conveyed in another. This principle is too clear to admit of doubt."

These cases rest upon the rule, which is firmly established, that the courts of one state or country are without jurisdiction over title to lands in another state or country. The clause of the federal constitution which requires full faith and credit to be given in each state to the records and judicial proceedings of every other state, is subordinate to this rule, and applies to

the records and proceedings of the courts only so far as they have jurisdiction. *Public Works* v. *Columbia College*, 17 *Wall.* 521; *Watts* v. *Waddle*, 6 *Peters* 389; *Brine* v. *Ins. Co.*, 96 *U. S.* 627, 635; *Davis* v. *Headley*, 7 *C. E. Gr.* 115, 121; *Nelson* v. *Potter, supra, p.* 324.

The Pennsylvania court having no jurisdiction over title to lands in this state, its decree, though conclusive within the jurisdiction which pronounced it, cannot be allowed to affect the title to these lands. It could not, therefore, operate to convert the deed to Felix into a mortgage, and then decree it a satisfied encumbrance. For this reason, as well as another which will be presently stated, the decree did not extinguish the Felix title.

The plaintiff also offered in evidence a deed made by Wood to Patrick O'Reilly, dated October 16th, 1869, whereby the premises in suit were reconveyed to O'Reilly. This deed was made pending the equity suit, after the evidence in that suit was taken, and before final decree. It sets out the substance of O'Reilly's bill, as to the nature and purpose of his deed to Felix, and the payment and discharge by O'Reilly of the debt or liability to secure which the deed was given, and recites that the grantor is satisfied that the allegations in the bill are true, and in formal words it reconveys the premises to O'Reily in fee.

The competency and effect of this deed depend upon the question whether Wood had an estate in, or power over, the lands whereof Felix died seized, to enable him to make a conveyance therefor. I will examine this subject, on the assumption that the will of Felix was properly admitted in evidence.

By his will Felix disposed of all his estate, real, personal and mixed. His testamentary disposition was upon certain trusts for the benefit of his wife during her lifetime, and after her death for the establishment of a charitable institution. He constituted and appointed the Right Reverend James F. Wood, Roman Catholic Bishop of Philadelphia, and his successors in office, executors, so long as this property shall remain situated in the said diocese, and provided that " should this property

at any time become situated in any other diocese, then and in that case the Roman Catholic Bishop of said diocese, and his successors in office, shall be the executors of the trust, with all the powers hereby given to the said Right Reverend James F. Wood, and his successors in office."

The testator's will created three distinct classes of trusts. First, for the benefit of his wife during her lifetime. Second, the appropriation of his estate to the purchase of a farm on which to erect the charitable institution, and the erection of suitable buildings thereon; and, third, for control over the institution when established. In connection with each of these trusts, and especially those mentioned in the first and second classes, with which we are concerned at this time, the will devolved upon the executor active duties. It provided that the testator's widow should, during her lifetime, have the interest (*i. e.* the interest and income) of all his estate, real, personal and mixed. It also directed that if the interest arising annually should not be sufficient to maintain her in her widowhood, " my executor or his successors shall give her annually a sufficient amount of the principal to maintain her according to her state of life, the same as she is now leading;" and " should she marry again, she shall only have the interest of all my estate, real, personal or mixed, of whatever nature it may be, until her death; but she shall not be permitted, by my executor or his successors, to receive any part of the principal to maintain herself and family." The testator's wife survived him, and was living and unmarried in February, 1868, when her testimony was given in the equity suit, and there is no proof of her death or marriage since that time.

With respect to the charitable institution, the testator did not set apart any lands whereof he died seized on which the buildings should be erected. He directed the executor, or his successors in office, to purchase a suitable farm in the vicinity of the city of Reading for that purpose. For the erection of buildings the testator provided as follows: " The balance of the money arising out of my estate, if any, after the death of my beloved wife, Alicia Kate, and the purchase of the afore-

mentioned farm, shall be appropriated for the erection of suitable buildings for a sisterhood and a seminary of learning for young ladies, under the direction of the bishop of the diocese in which these lands are situated. Should there be a surplus after the above directions are faithfully carried out, then the balance shall be put out at interest and applied for improvements in buildings, as necessity requires." He also directed that the lands purchased should, at no time, be encumbered by judgment, bond or mortgage, and should forever remain free and unencumbered, and that any improvements made thereon should be paid for in cash, or its equivalent, at the time the improvements were made.

In a subsequent clause the testator provided for the event of the death of his wife in his lifetime, and in that case he directed that all his estate, of whatever nature it might be at the time of his death, should at once be appropriated towards the fulfillment of the aforementioned objects, namely, the purchase of the said mentioned farm and the erection of suitable buildings, as aforementioned.

In the clause of his will in which the testator designated his executor he had in view the visitorial powers to be exercised over the institution after it had been' established. That is apparent from the phrase, " as long as the said property shall remain situated in said diocese; but should this property at any time become situated in any other diocese, then," &c. But no such qualification or limitation was imposed with respect to the property or estates out of which the interest or income or the principal was to be derived for his wife's support, or out of the proceeds of which the farm for the institution was to be purchased and the buildings erected. To these purposes the testator's entire estate, real, personal and mixed, wherever situated, of whatever nature it might be, at his death, was devoted, to be applied by his executor or his successors in office.

The will contains no devise to the executor in express words, nor is their any express grant of power to make sale or disposition of any lands of which the testator died seized. In

consequence of a doubt whether such estate or power might be implied, an act was obtained from the legislature of Pennsylvania authorizing the executor to sell and convey lands. For reasons already given this statute is of no avail. To support the conveyance by Wood, an estate or a power of sale vested in him must be deduced from the will itself.

The instances are numerous in which courts of law, as well as courts of equity, in the constructions of wills, have implied an estate or power of sale in an executor or trustee from the nature, character and extent of the trusts or duties imposed on him. Mr. Lewin states these propositions as rules of construction adopted by the courts : *First,* Whenever a trust is created a legal estate sufficient for the execution of a trust will, if possible, be implied. *Second,* the legal estate limited to the trustee will not be carried further than the complete execution of the trust requires. And, in exposition of the first rule, he adds that the court has, in some instances, supplied the estate *in toto* ; as where a testator devised to a *feme covert* the issues and profit of certain lands, to be paid by his executors, it was held that the land itself was devised to the executors, in trust, to receive the rents and profits and apply them to the use of the wife. 1 *Lewin on Trusts* (8 *ed.*), 212, 213. In further illustration of the rule the author says : " Thus, a trust to sell, even on a contingency, conveys a fee simple, as indispensable to the execution of the trust, and the construction is the same in a sale implied as where the devise is upon a trust out of the rents and profits of an estate to discharge certain legacies made payable at a day inconsistent with the application of the annual profits only." *Id.* 213. Another illustration is given in these words : " If a testator simply appoints his executor and trustee, it seems the latter word is not so exclusively applied to real estate as to carry by implication a devise of the testator's freehold ; but if the testator directs certain acts to be done by the trustee or by the executor, which belong to the owner of the freehold, or which require that the trustee or executor should have dominion over the real estate, such a devise will be implied." *Id.* 214.

A devise of the rents and profits of certain lands to J. S., the wife of J. S., " to be paid by my executors to her," the executors shall thereby take the lands in trust to receive the rents, issues and profits to the use of the wife. *Bush* v. *Allen*, 5 *Mod.* 63, 100. A gave an annuity to B for her life, to be paid out of certain lands by his executor—*Held*, that the executor took an estate for the lifetime of the annuitant. *Jenkins* v. *Jenkins*, *Willes* 650. In that case Lord Chief Justice Willes laid down these rules: *First*, that an heir-at-law shall not be disinherited but by express words, necessary implication or manifest intent; *second*, that every devise must be considered as intended to be beneficial to the devisee; *third*, that every devisee who is to pay anything out of an estate must have such an interest in it as will enable him to pay it, otherwise the intention of the devisor will be frustrated. He added: " As the annuity is to be paid by the executor, the intent of the devisor cannot take place unless the executor has at least such an estate in the lands devised as will last as long as the annuity is payable." In *Doe* v. *Woodhouse*, 4 *T. R.* 89, A devised his real and personal estate to his wife for life, and directed part of his personalty to be sold after his wife's death. He gave two annuities to A and B, to be paid by his executor out of his whole estate, to commence after his wife's death. He then devised " the remainder of the profits after his wife's death, and after the yearly payments to the annuitants out of his whole estate," to C, D and E. It was held that without any express devise to the executor he took a fee. Lord Kenyon said: "As these annuitants were to take a beneficial interest out of the real estate, and the payments were to be made by the executor, the latter must of necessity take a fee in order to answer the charges upon them. * * * It is clear that in this case the whole estate vested in the executor by the way of a use executed, because that which he was required to do could not be answered by a less *quantum* of estate."

In *Oates* v. *Cooke*, 3 *Burr.* 1684, the testator gave several annuities, some for life, some in fee. One of the annuities for

life he directed to be paid by his trustee or executor, and added: "These legacies to be faithfully paid by my trustee, John Cooke, every year and yearly, a month after Martinmas." After several small legacies and directions, he added: "And I do hereby constitute John Cooke, before mentioned, sole executor and trustee of this my last will and testament, he paying all my just debts, legacies and funeral charges." It was held that all the testator's freehold and copyhold estate passed to Cooke in fee. Mr. Justice Wilmot said: " Cooke, the trustee, took the legal estate by this devise. The intention of the testator is to be collected from all parts of the will taken together; and if it be thereupon necessary to imply it, it is the same thing as if it was particularly expressed. Now, here are trusts to be executed which the trustee could not execute without having an estate in fee devised to him. No particular technical terms are requisite; it is sufficient if the implication be strong, violent and necessary."

In *Anthony* v. *Rees*, 2 *Cromp. & J.* 75, the testator gave to his wife " the sum of £20, yearly and every year, to be paid out of the freehold estates and the lease of Penlan by trustees hereinafter named." He then appointed E. and G. "as trustees to look in that justice should be duly administered between the said parties." It was held that the legal estate vested in the trustees. Bailey, Baron, said : "When trustees are directed to do anything, for the performance of which the legal estate is requisite, then they are to have the legal estate. Now, here they are to pay out of the legal estate. How can they do so except by taking the rents and profits and paying the annuity out of them. * * * If trustees are to pay out of lands, there are many cases which show that they must take the legal estate. On the whole, I entertain no doubt that the legal estate vested in the trustees, it being necessary for the performance of their duties." *Doe* v. *Haslewood*, 6 *Ad. & E.* 167 ; *Doe* v. *Pratt*, *Id.* 180; *Doe* v. *Gillard*, 5 *B. & Ald.* 785; *Stevenson* v. *Mayor of Liverpool*, *L. R.*, 10 *Q. B.* 81 ; *Shaw* v. *Weigh*, 2 *Strange* 798 ; *Davis* v. *Jones*, 24 *Ch. Div.* 190 ;

*Gibson* v. *Lord Montfort, 1 Ves. Sr.* 489, are precedents in the same line of decision. See, also, *Hill on Trustees* 232.

A power in the executor to sell lands of the testator, where a power of sale is not expressly given, will arise by implication under similar circumstances, the only distinction between the implication of an estate and that of a power being that where the purposes of a trust can be fully accomplished by a sale without an actual estate, the executor will take a power to sell, instead of an estate. *Vanness* v. *Jacobus,* 2 *C. E. Gr.* 153; *Dewey's Exrs.* v. *Ruggles,* 10 *Id.* 35, 37; *Haggerty* v. *Lanterman,* 3 *Stew. Eq.* 37; *Belcher* v. *Belcher,* 11 *Id.* 126; *Craig* v. *Craig,* 3 *Barb. Ch.* 77, 94; *Tucker* v. *Tucker,* 1 *Seldon* 408. Chief Justice Shaw stated the rule in these words: "If a testator, having a right to dispose of his real estate, directs that should be done by his executor which necessarily implies that the estate is first to be sold, a power is given by this implication to the executor to make such sale and execute the requisite deed of conveyance." *Going* v. *Emery,* 16 *Pick.* 107, 112.

The testator blended together his real and personal property, and disposed of it as a common fund under the designation of "his estate." In the provision for his wife he contemplated that his estate, real, personal or mixed, might be converted into money, in the event of the principal being at any time needed for her maintenance, and the principal money so required he directed to be given to her annually by his executor. He intended likewise that his entire estate should be converted into money after his wife's death, to purchase lands and erect buildings for the charitable institution. In the clause providing for the building he designated the fund to be so applied as "money arising out of my estate," and directed that if any surplus remained, "the balance shall be put out at interest." In making provision, in the event of the death of his wife in his lifetime, he directed that all his estate, of whatever nature it might be at the time of his death, should be appropriated to the purchase of the farm and the erection of suitable buildings.

The objects the testator had in view in the testamentary disposition of his property could not be effectuated unless his estate were convertible into money. Nor could his executor perform the duties of his trust to appropriate the testator's property to those objects without an estate in his lands or power to convert them into .money. Under the rule above stated the executor took a fee by implication in the testator's lands, or at least a power of sale. In either event his deed would convey the legal title. If conveyance was prematurely made, or for an inadequate consideration in breach of trust, the title would, nevertheless, be good at law. The relief would be in equity, and at the instance only of the *cestuis que trust* whose interests were prejudiced thereby. *Hill on Trustees*, 278–282, 283 ; 2 *Lewin* 572. The defendant does not hold under the Felix title. He could not defeat title under the executor's deed upon the equitable rights of the *cestuis que trust*. He is simply in possession, without any title disclosed except mere possession.

The deed from Wood contains a recital of the act of the legislature of Pennsylvania empowering him to make sale of the testator's lands, and of the circumstances under which the deed to Felix was made, and was executed by the grantor as executor. In a deed under a power, the intention to execute the power must appear on the face of the deed ; but it is sufficient that it appears inferentially. *Munson* v. *Berdan*, 8 *Stew. Eq.* 376, 378 ; *Warner* v. *Conn. Mutual Ins. Co.*, 109 *U. S.* 357, 365. If there be any informality in the deed in this respect, it was cured by the validating act passed by the legislature of the state. *Pamph. L.* 1872, *p.* 357. The power of the legislature to validate deeds imperfect for mere informalities is undoubted. ·

To complete the chain of title from Felix it was necessary for the plaintiff to show title in Wood, and this could be done only by proof of the Felix will. A copy of this will, certified by the register of probate of the county of Berks, authenticated in the manner prescribed by the act of congress, was filed and recorded in the office of the surrogate of Atlantic county, April

11th, 1882, and a transcript of that record, certified by the surrogate, was produced and received in evidence as proof of the will.

The common law method of proving a devise of lands was the production of the original will and proof of its execution by the subscribing witnesses. At an early day provision was made for the admission of a certified transcript of a will regularly proved and recorded in the prerogative office, or the office of the surrogate of any county in this state, as *prima facie* evidence of the title to land. *Rev.*, 756, §§ 21, 22; *Allaire v. Allaire*, 8 *Vroom* 312; *S. C.*, 10 *Id.* 113. The fourth section of the act of March 17th, 1713–14, made provision for the admission in evidence, as proof of title to lands, of a copy of a will made in another colony, being duly proved according to the custom of such colony and certified under the great seal. *Rev.* 1250, § 37. By the act of March 28th, 1866, it was provided that when any will shall have been admitted to probate in any state or territory of the United States, and any person shall desire to have the same recorded in this state for the purpose of making title to lands in this state, it should be lawful for any surrogate of any county in this state, upon an exemplified copy of such will being filed in his office, exemplified and attested as a true copy in the manner required by the laws of the state or territory in which such will shall have been admitted to probate, to make it legal evidence in such state, to record such will and file the said copy in his office; and any such will, upon being so recorded, should have the same force and effect, with respect to all lands and real estate therein devised, as if the same had been admitted to probate in this state, and such record, or certified copies thereof, should be received in evidence in all courts of this state. *Rev.*, 757, § 26. This act was repealed in 1872 (*Pamph. L., p.* 58), and restored in 1873 (*Pamph. L., p.* 168), and re-enacted March 17th, 1882, with the addition that all conveyances of such real estate theretofore or thereafter made by any executor, or by any devisee, should be as valid as if the said will had been admitted to probate in this state. *Pamph. L.*, 1882, *p.*

112. The legislation on this subject is stated, and the force and effect of transcripts of the records of wills, when in evidence as proof of title to lands, are considered in *Allaire* v. *Allaire*, 8 *Vroom* 312, and *Nelson* v. *Potter, supra, p.* 324.

The statutes which substitute transcripts in place of the production of the will and proof by subscribing witnesses as evidence of title to lands, apply only to wills that have been admitted to probate. The surrogate is not authorized to record any foreign will that may be exemplified and attested in the manner designated in the statute. He has no jurisdiction to make such a record, unless it be of a will that has been admitted to probate in the state from which the copy has been exemplified. His official act in recording and filing the copy of the will, is like the official act of the county clerk in recording deeds. The clerk is authorized to make a record of deeds which have been acknowledged and certified according to law, and his entry on the record of a deed not so acknowledged does not make his record, or a certified copy thereof, competent evidence. *Fox* v. *Lambson,* 3 *Halst.* 275, 280; *Harker* v. *Gustin,* 7 *Id.* 42, 43. The legislature did not intend to make a foreign will evidence without any proof, except that the paper purported to be a will. Probate in the foreign jurisdiction, as evidence of the *factum* of the will, is a condition precedent to making a record in this state. The surrogate's jurisdiction to make the record being dependent upon the fact that the will had been admitted to probate in the state from which the copy was exemplified, that jurisdictional fact must appear by the certificate transmitted with the copy of the will. If the surrogate record a will without such certificate, his record is a nullity, and he can make no transcript of such a record which will be competent evidence.

In the certificate attached to the copy of this will, the register of probate certified "the foregoing to be a true and correct copy of the original last will and testament of Henry Francis Felix, deceased, as filed in the register's office in and for the county of Berks." It did not in any way appear before the surrogate that the will had been admitted to probate

in Pennsylvania, except by the affidavit of an attorney-at-law practicing in that state, that the said will had been duly proved and admitted to probate, as well as recorded in the office of the register of wills of Berks county. This affidavit was not competent to establish that fact.

The probate of a will is a judicial act, to be proven by a sworn or duly certified copy of the record, or at least by the certificate of the officer before whom the probate is made. And where the object of making such a will a record in this state is for the purpose of making title to lands, the record exemplified from another state must contain the proofs taken upon the probate, that it may appear by such proofs that the will was made and executed in the manner and with the formalities prescribed by the statute of this state for devises of lands. Without such proofs, the record, however authenticated, is not even *prima facie* evidence of title to lands. *Allaire* v. *Allaire,* 8 *Vroom* 312; *S. C.,* 10 *Id.* 113; *Nelson* v. *Potter, supra, p.* 324.

The court erred in admitting the transcript of the will in evidence, and in directing a verdict for the plaintiff. For these reasons the judgment should be reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, DEPUE, DIXON, GARRISON, KNAPP, SCUDDER, VAN SYCKEL, BROWN, COLE, McGREGOR, PATERSON.    12.