### JOY v. MIDLAND STATE BANK et al.

A tax deed is at least color of title, and one in possession thereunder may bring an action under Laws 1905, c. 81, to quiet title against one having no title.

A court having jurisdiction over the person of a party to a suit has jurisdiction to compel him to execute a conveyance of real estate located in another state, and a conveyance executed pursuant to an order of the court by one empowered to convey the legal title will be recognized by the courts of the state in which the land is located; but the power to convey must be conferred either by statute or by act of the holder of the legal title.

A court of equity, acquiring jurisdiction over the parties in cases of fraud, trust, or contract, will administer full relief without regard to the situation of the property in which the controversy had its origin, and it may decree a conveyance of real estate beyond the control of the court, provided it can be reached by the exercise of its powers over the person, and the relief asked is of such a nature as the court is capable of administering.

A receiver of a foreign corporation appointed by the court of the state of the origin of the corporation and considered as a court or common-law receiver is not vested with the legal title to real estate of the corporation situated in South Dakota, where the corporation has not voluntarily, or otherwise, conveyed the land to the receiver but the legal title remains in the corporation.

Where a trust is created, a legal estate sufficient to execute the trust will, if possible, be implied.

A receiver of a Nebraska corporation appointed by a Nebraska court under a statute forming a part of the charter of the corporation, and authorizing the receiver to take charge of and wind up the corporate business, is a statutory receiver and acquires as against the corporation such legal title as is sufficient for the execution of the trust, though the Nebraska statute does not expressly vest title in him, and the receiver becomes under the statute the successor to the corporation, and as such is entitled to full recognition in every state where the corporation may have interests.

A Nebraska corporation is bound by the statute authorizing the appointment of a receiver, and on the appointment of a receiver it an., its officers are forbidden to do any act, and it cannot question the title of a purchaser from the receiver of real estate located in South Dakota.

A deed executed and delivered by a receiver relates back to and takes effect as of the date of the rceiver's sale.

Where a receiver's sale was prior to a third person's possession of the land sold, the deed executed and delivered while the third person was in possession was not invalid under the statute declaring invalid any conveyance of land when at the time thereof the land is in the open and notorious possession of one not a party to the transfer.

Where the receiver of a corporation contracted to sell its land to a purchaser who paid the price thereof, the purchaser, acquiring a deed while a third person was in possession, acquired an equitable title good as against the corporation, if in existence.

A tax deed, which shows on its face that the county whose treasurer executed the deed purchased the land at public auction, is void on its face.

One in possession of and claiming land under a tax deed void on its face must pay the taxes on the land, and not allow the same to go to sale, and his purchase on a sale is a mere payment of the taxes.

Under the Scavenger Act (Laws 1901, c. 51), providing for the collection of delinquent taxes, and declaring in section 15 that title shall not pass until the filing of proof of service of notice of the maturity of the certificate of sale, and that the proof must be filed before the maturity of the certificate, a tax title is not good where the proof of service of such notice was not filed until about five years after the expiration of the year for redemption from the sale.

Where a possession by one under a tax deed constituting bare color of title has not continued for 10 years, and there has not been 10 years' payment of taxes under such color of title, the color of

title, possession, and payment of taxes are not sufficient to cut off the title of the owner.

(Opinion filed October 4, 1910.)

Appeal from Circuit Court, Pennington County. Hon. LEVI McGEE, Judge.

Action by Francis F. Joy against the Midland State Bank and others, in which Julius A. Perkins was made a defendant by order of court on his petition. From a judgment for plaintiff, defendant Julius A. Perkins appeals. Reversed.

*Buell & Gardner* and *Hall & Stout,* for appellant.

Where it appears from the tax deed that the premises described therein were purchased at public auction by the county at a competitive bidding sale, the deed is void upon its face. Reckitt v. Knight, 16 S. D. 395. Where it appears from an inspection of the tax deed that the property, consisting of 320 acres, was sold as one lot or parcel for the gross consideration of $65.22, it is void upon its face and conveys no title. Palmer v. Lathrop, 10 S. D. 216. One in possession of and claiming land under a tax deed void on its face must pay the taxes on the land, and not allow the same to go to sale, and his purchase on a sale is a mere payment of the taxes. Wambole v. Foote, 2 Dak. 1; Burns v. Lewis, 13 S. E. 123; Douglas v. Dangerfield, 10 Ohio, 152; Lacy v. Davis, 4 Mich. 140; Voris v. Thomas, 12 Ill. 442; Bassett v. Welsh, 22 Wis. 350; Christy v. Fisher, 58 Cal. 250; Keith v. Keith, 26 Kan. 26. A notice of the expiration of the time of redemption not addressed to the owner of the premises described therein, nor to any other person or persons, is wholly insufficient to mature the certificates. Rector v. Wilhelmy Co. v. Maloney, 15 S. D. 271; Ambler v. Patterson, 114 N. W. 781. The statute requires that the notices must not only be given, but proof of service or publication must be filed prior to the expiration of the time fixed for redemption. Nichol v. Sherman, 22 S. D. 189, 110 N. W. 777; King v. Lane, 21 S. D. 101, 110 N. W. 37. A court of equity acquiring jurisdiction over the parties in cases of fraud, trust, or contract, will administer full relief without regard to the situation of the property in which the controversy has its origin,

and it may decree a conveyance of real estate beyond the control of the court, provided it can be reached by the exercise of its powers over the person, and the relief asked is of such a nature as the court is capable of administering. Fall v. Fall, 75 Neb. 120, 113 N. W. 175; Gilliland v. Inabnit, 92 Iowa, 46, 60 N. W. 211; Weimar v. Weimar, 82 Va. 890, 5 S. E. 536; Lindley v. Reilly, 50 N. J. Law, 636, 15 Atl. 379; Chattanooga R. Co. v. Evans, 66 Fed. Rep. 809; Wright v. Lee, 2 S. D. 596. The only party who can question the title to land resting in a foreign corporation which has not complied with the foreign corporation act of the state, is the state itself. It is a question purely between the state, in its political capacity, and the foreign corporation, and a question that private parties cannot raise. 19 Cyc. 1241, 13 A. & E. Ency. Law, 853.

*Charles W. Brown,* for respondent.

The district court of Douglas county, Nebraska, had no jurisdiction to order a sale of the land in question at the court house in Omaha in that county, and the receiver's deed, made against the objections of the Midland State Bank, is void for want of jurisdiction. Fall v. Eastin, 215 U. S. 1; Fall v. Fall, 113 N. W. 175; Watts v. Waddle, 6 Pet. 389, L. ed. 437; Boone v. Childs, 10 Pet. 177, L. ed. 388; Watkins v. Holman, 16 Pet. 25, L. ed. 873; Miller v. Sherry, 2 Wall, 237, L. ed. 827; Corbett v. Nutt, 10 Wall, 464, L. ed. 976; Simpkins v. Smith, 50 How. Pr. 56; Wighton v. Bosler, 102 Fed. 70; 3 Pom. Eq. Jur. §§ 1317, 1318, and notes; High on Receivers, §§ 239-241, 47; § 4 Freeman Void Judicial Sales. The Nebraska sale and deed are void, because in contravention of the law and public policy of South Dakota, and because at the date of the deed the land was in the actual adverse possession of the plaintiff's grantor. Fitzgerald v. Miller, 7 S. D. 61; Frum v. Weaver, 13 S. D. 457; Shelby v. Bowden, 16 S. D. 531; §§ 3303, 6389 Compiled Laws of 1887; §§ 1226, 1227, 1271, 1189 Rev. Civil Code; §§ 883-885 Rev. Civil Code; Small v. Smith, 14 S. D. 621.

WHITING. P. J. This action was brought by the plaintiff to quiet title in certain lands in Pennington county; said action

being brought under the provisions of chapter 81 of the 1905 Session Laws of this state. The defendant Perkins was not named in the original summons or complaint, and was not a party to said action except as he was made so under the term "persons unknown"; but he became party defendant upon order of court, made at his request. The cause was tried to the court without a jury, and findings of fact were made upon which conclusions of law and decree were entered in favor of the plaintiff. The motion for new trial having been denied, the defendant Perkins appeals to this court from the judgment of the trial court and the order denying a new trial. The Midland Bank made no appearance in the trial court, and a default decree was entered against it.

The findings of the court were quite voluminous, and we deem it unnecessary to recite the same in full herein. Under the evidence the following facts appear uncontroverted: In September, 1896, the Midland State Bank was a corporation, existing and doing business under and by virtue of the laws of the state of Nebraska and was the holder of the fee title to the real estate in question. Upon that day proceedings were started in district court of Douglas county, Neb., praying for the appointment of a receiver of such corporation, which proceedings were brought under and by virtue of the Constitution and a statute of that state; the statute in question providing for the appointment by the district courts, upon application of the Attorney General, of a receiver to take charge of and wind up the business of a banking corporation whenever it should appear, upon proper examination, that such bank had less property than that required by the laws of said state, or was conducting its business in an unsafe and unauthorized manner. In such proceedings one Joseph W. Thomas was by such court appointed the receiver of such banking corporation, and by the order appointing him, dated September 16, 1896, he was authorized, among other things, to sell the real estate of said bank upon the further order of said court. Such receiver duly qualified by giving bond which was approved by the judge of the court. On September 10, 1897, the said receiver undertook and purported to sell, to the defendant Julius A. Perkins, certain assets of said cor-

poration, among which was the land involved in this suit. A report of such sale was made to the court, and on October 6, 1897, such sale was confirmed by said court over the objections of said Midland State Bank; and on October 19, 1897, the said receiver executed a deed, purporting to convey the said lands to the appellant herein, which deed was never filed for record in the office of the register of deeds of Pennington county until July 20, 1907. It is under and by virtue of this deed that appellant claims title to the land and seeks, through counterclaim, a decree quieting such title. Plaintiff makes no claim of title under and through the original source of title, but bases his claim solely upon the following: A treasurer's tax deed, purporting to convey all of this land, was on October 15, 1897, issued by the then treasurer of Pennington county to one Paul S. Woods as grantee, which deed was, upon that date, placed of record, and the said Paul S. Woods immediately entered into possession of said land under said deed. He continued in such possession until he conveyed his interest in said land to the plaintiff, who ever since has been in possession of the same. On November 6, 1901, and while said Woods was holding possession of said lands under the above-mentioned tax deed, he purchased all of said lands upon a tax judgment sale under what is known as the "Scavenger tax law." Certificates of sale were issued to him of that date, which certificates were assigned to this plaintiff on August 2, 1902, upon which date plaintiff entered into possession of said premises. On the same date Woods gave plaintiff a quit-claim deed of said premises, which deed was recorded August 4, 1902. Plaintiff published notices of expirations of certificates of purchase; the last publication of such notices being September 10, 1902. Such notices gave as date for termination of redemption period December 17, 1902. The proof of these publications was never filed in the office of the clerk of courts of Pennington county until December 13, 1907. Such proof was in the form of affidavits sworn to on December 12, 1907. From the date of the tax deed running to Woods all taxes against the lands were paid by Woods or plaintiff; some of such payments being made by purchases at tax sale or redemption from purchase at

sale. This action was commenced July 21, 1906, upon which date plaintiff filed notice of lis pendens in the usual form.

Upon this appeal the appellant, not only maintains the validity of the title claimed by him, but attacks the title claimed by respondent. Respondent in his brief cites no authorities and makes no argument in support of his title, simply taking the position that appellant has no title to such premises, and that, as against a party holding no title, respondent's tax deed, being at least color of title, is, together with his possession of said premises, sufficient to entitle him to the decree of the trial court under the decisions of this court in the cases of Weeks v. Cranmer et al., 18 S. D. 441, 101 N. W. 32, and King v. Lane, 21 S. D. 101, 110 N. W. 37. It must be conceded that respondent is right in his conclusion providing his premise—that appellant has shown no title—is correct, as such tax deed constitutes at least color of title. It is therefore necessary for us first to determine whether or not appellant received any title to said premises through such purported receiver's sale.

The petition for the appointment of a receiver for the Midland State Bank had attached thereto, and forming a part thereof, a copy of a resolution purporting to authorize the president of such bank to appear in court, waive all notices and processes, and consent to the appointment of a receiver for such bank, upon the ground that, for certain reasons given, "it is unsafe and inexpedient and against the interest of the depositors for such corporation to continue transacting a banking business." The petition itself recited "that it is unsafe and inexpedient for said bank to continue the banking business," and applied for full power, among other things, to sell the real and personal property of the bank, to collect all its assets, and pay all claims against it. It clearly appears that it was filed under the statute above referred to.

It is the contention of the appellant that the appointment of such receiver and his sale of the property in suit passed to the purchaser on such sale the title of the bank to such property, it being the claim of appellant that the proceedings against the bank were proceedings in personam and not in rem; that, under such

proceedings, the court acquired jurisdiction over the person of the bank with the power to require a conveyance of its title to the purchaser on sale; and that the receiver had full authority to convey such title.   Appellant has cited, in support of such contention, Fall v. Eastin, 215 U. S. 1, 30 Sup. Ct. 3, 54 L. Ed. —, 23 L. R. A. (N. S.) 924; Fall v. Fall, 75 Neb. 120, 106 N. W. 412, 113 N. W. 175, 121 Am. St. Rep. 767; Gilliland v. Inabnit, 92 Iowa, 46, 60 N. W. 211; Wimer v. Wimer, 82 Va. 890, 5 S. E. 536, 3 Am. St. Rep. 126; Lindley v. O'Reilly, 50 N. J. Law, 636, 15 Atl. 379, 1 L. R. A. 79, 7 Am. St. Rep. 802.   We do not think, however, that, upon a careful analysis of these cases, there can be found support for appellant's claim that solely through proceedings in the Nebraska courts title to this property passed, unless there was in the evidence something to warrant a finding that the bank had conferred upon the receiver power to convey legal title to this land, and there was no finding to such effect.   It will be found that the great weight of authority is to the effect that, while the courts have a right and power, when they have acquired jurisdiction over the person of a party in a proper case, to compel him to execute a conveyance of property in another state, which conveyance the courts of such other state will recognize as valid and sufficient to pass the legal title, it is only when, pursuant to the order of such a court, a conveyance is executed by one empowered to convey the legal title, that the courts of the situs of the land will recognize title to have passed.   Furthermore, the power to convey must not be a power given by such foreign court, but a power conferred either by statute or by act of the holder of the legal title; and it is the deed of conveyance from the duly authorized person that is recognized as having extraterritorial effect, and not the decree ordering such conveyance.

Under such line of decisions, it is held that one may sue, in any state where defendant may be served, to require a conveyance of real estate to be executed pursuant to a contract, though the real estate is situate in another state, and plaintiff may get a decree for such conveyance, which decree may be enforced by process of the court requiring defendant to make deed, and that

such deed when so executed, even through compulsion, will convey good title; but the courts almost universally hold that, where the defendant refuses to comply with such a decree, a commissioner cannot be appointed to make a conveyance which will be recognized in the state where the land is situated, nor can the court make any decree which will have the effect of a conveyance in such other state, and many courts hold that they will not recognize a deed executed pursuant to any order or proceedings in invitum in a foreign court. The well-established rule of law as laid down in the decisions above cited is well stated in Wimer v. Wimer, supra: "It is undoubtedly well settled that in cases of fraud, trust, or contract, courts of equity will, whenever jurisdiction over the parties has been acquired, administer full relief without regard to the nature or situation of the property in which the controversy had its origin, and even where the relief sought consists in a decree for the conveyance which lies beyond the control of the court, provided it can be reached by the exercise of its powers over the person, and the relief asked is of such a nature as the court is capable of administering. Penn v. Lord Baltimore, 2 Lead. Cas. Eq. 1806 et seq.; Dickinson v. Hoomes, 8 Grat. [Va.] 353; Barger v. Buckland, 28 Grat. [Va.] 863; Poindexter v. Burwell, 82 Va. 507. But even as to these cases it must be borne in mind that the decrees of the foreign court do not directly affect the land, but operate upon the person of the defendant, and compel him to execute the conveyance, and it is the conveyance which has the effect, and not the decree. Davis v. Headley, 22 N. J. Eq. 115; 4 Minor, Inst. pt. 2, p. 1201."

In the case at bar no deed was executed by the bank, either voluntarily or otherwise, to the receiver or to Perkins; and the receiver, if considered merely as a court or common-law receiver, was never vested with the legal title to the property, and therefore the legal title would remain in the bank, as no decree or order of the court of Nebraska could have the effect of transferring title to land beyond that state. Watts v. Waddle, 1 McLean, 200, Fed. Cas. No. 17295; Simkins v. Smith, 50 How. Prac. 56.

There seems, however, a situation in the case at bar which has been overlooked by counsel. In many states there are statutes

providing where conditions exist requiring the dissolution of a cor-
poration, that a certain officer named by the statute or a person
or persons to be named by some court, be trustees to wind up
the affairs of a corporation. If to be appointed by a court, they
are sometimes, as in the Nebraska statute, spoken of as receivers.
Under the Nebraska law the receiver of the bank was appointed
"to take charge of and wind up such banking business." In order
to carry out such trust imposed by statute, he must be able to
transfer land, and, though there are in the Nebraska statutes no
express words vesting title in the receiver to the property of the
corporation, yet certainly the rule applied in creation of trusts by
will would apply, namely: "Whenever a trust is created, a legal
estate sufficient for the execution of the trust will, if possible, be
implied." 1 Lewin on Trusts (8th Ed.) 212; 1 Perry on Trusts
(5th Ed.) § 313. The learned author of Thompson on Corpora-
tions says: "In the case of a statutory receiver, the operation and
effect of the statute frequently is to vest the legal title in the
receiver for the purposes of the trust, and to make him, in sub-
stance and effect, a statutory trustee. Such is the effect which
seems to have been ascribed to a statute of New Jersey. So, in
case of a receiver appointed under the Revised Statutes of New
York, in a stockholders' action to wind up the affairs of an insur-
ance corporation on the ground of a violation of its charter, unless
his powers are restricted by the order appointing him, he is abso-
lutely vested with all the property and effects of the corporation,
and has full power to sell and dispose of the same and to settle
its affairs. This, it is pointed out, is not a common-law receiver-
ship to protect the fund pending the litigation; but the receiver is
a statutory assignee, vested with nearly all the powers and author-
ity of the assignee of an insolvent debtor." 5 Thompson on Corp.
§ 6920. In Smith on Receiverships, p. 20, it is said: "As we have
already seen, both in England and this country, the law of re-
ceivership has been extended by statutory enactment to many sub-
jects, not previously embraced in the ordinary chancery jurisdic-
tion, and the powers, duties, and relationship of the receiver have
been likewise greatly increased, and in many cases, particularly

with regard to insolvent corporations, he is vested with all the property and effects of the corporation, the power to sell and dispose of the same and distribute the proceeds to its creditors and stockholders. This class of receivers we have termed statutory receivers, as distinguished from common-law receivers, the functions of which are sui generis." And in High on Receivers (4th Ed.) § 599, it is said: "As regards the effect of the appointment of a receiver over a corporation upon the title to its real estate, it would seem that when the appointment is merely pendente lite, and no assignment is executed by the corporate body to the receiver, the title is not divested; the proceedings being regarded as inchoate, and the right of the receiver as only a possessory right for the purposes of the suit. Where, however, a receiver is appointed upon the dissolution of a corporation, it is held that the title to its realty vests in the receiver, for the benefit of creditors and shareholders."

A case which it seems to us is, in principle, on all fours with the case at bar, is that of Parsons et al. v. Charter Oak Life Ins. Co. et al. (C. C.) 31 Fed. 305, and, in view of the importance of the question before us, we feel justified in quoting at length therefrom. The action was brought to determine the rights to certain real estate in Iowa, as between a receiver appointed by the courts of Connecticut, for the purpose of winding up the affairs of an insurance company organized under the laws of Connecticut, and creditors of said company in Iowa, who were seeking to have a receiver appointed by the courts of Iowa over the same property. Among other things, the court said:

"In Relfe v. Rundle, 103 U. S. 222 [26 L. Ed. 337], is found the rule which is applicable to the present case. In that cause it appeared that the Life Association of America was a corporation organized under the laws of the state of Missouri, one of the provisions of which is that, upon the rendition of judgment dissolving a company or declaring it insolvent, all the assets of such company shall vest in fee simple in the superintendent of insurance, to be by him disposed of for the benefit of the creditors and policy holders of such company. In October, 1879, proceedings were

commenced in Missouri for the purpose of having the association declared insolvent, and. winding up its affairs under the statute. In November, 1879, Rundle and wife, who were policy holders in the company, commenced suit in a Louisiana court for the purpose of having the assets of the association in Louisiana declared a trust fund, and applied to the payment of the claims of the Louisiana creditors, and, to that end, to keep such assets out of the hands of William S. Relfe, who was the superintendent of insurance of the state of Missouri. The case came before the Supreme Court upon the question of the right of removal to the federal court; it being urged in opposition thereto that Relfe had no standing in the courts of Louisiana. It was held that Relfe was not an officer of the Missouri state court, but the person designated by law to take the property of any dissolved life insurance company of that state and hold and dispose of it in trust for creditors; that the law which clothed him with this trust was, in legal effect, part of the charter of the company; that he was an officer of the state, and his authority came, not from the decree of the court, but from the statute; and that he was, in effect, the corporation itself, for all purposes of winding up its affairs. The court then proceeds to say: 'We are aware that, except by virtue of some statutory authority, an administrator appointed in one state cannot generally sue in another, and that a receiver appointed by a state court has no extraterritorial power. But a corporation is the creature of legislation, and may be endowed with such powers as its creator sees fit to give. Necessarily it must act through agents, and the state which creates it may say who those agents shall be. One may be its representative when in active operation, and in full possession of all its powers, and another if it has forfeited its charter, and has no lawful existence except to wind up its affairs. No state need allow the corporations of other states to do business within its jurisdiction unless it chooses, with perhaps the exception of commercial corporations; but, if it does, without limitation, express or implied, the corporation comes in as it has been created. Every corporation necessarily carries its charter wherever it goes, for that is the law of its existence. It may be restricted in the use

of some of its powers while doing business away from its corporate home; but every person who deals with it everywhere is bound to take notice of the provisions which have been made in its charter for the management and control of its affairs, both in life and dissolution. By the charter of this company, if a dissolution was decreed, its property passed by operation of law to the superintendent of the insurance department of the state, and he was charged with the duty of winding up its affairs. Every policy holder and creditor in Louisiana is charged with notice of this charter right, which all interested in the affairs of the corporation can insist shall be regarded. The appellees, when they contracted with the Missouri corporation, implicitly agreed that, if the corporation was dissolved under the Missouri laws, the superintendent of the insurance department of the state should represent the company in all suits instituted by them affecting the winding up of its affairs.' * * *

"Turning, now, to the laws of the state of Connecticut, we find it enacted that, if the insurance commissioner of the state shall find an insurance company organized under the laws of that state to be insolvent, 'he shall bring a petition to the superior court of the county in which the principal office of such company is located, if in session; and, if not, to a judge of the Supreme Court of Errors, praying for the appointment of a receiver, and that the charter of the company may be annulled;' it being further provided that the court or judge 'may appoint a receiver, make all necessary orders in reference to the delivery to and possession by such receiver of the assets and property of such company, and the sale and conveyance of the same by him, and may direct the application of the avails of such assets and property equitably, in satisfaction of the claims proved against such company, and the payment of the present value of its outstanding policies, either in whole or in part, or to the reinsurance of its outstanding policies in some solvent company,' etc. To bring about such equitable distribution of its assets, the charter and laws of Connecticut provide for the appointment of a receiver to take charge of the property of the company in case of its dissolution, and the duty imposed upon

the receiver is not materially different from that imposed upon the state superintendent under the Missouri statute construed in Relfe v. Rundle. For the purpose of collecting the assets of the company, he is the successor of the dissolved corporation. He is in fact a trustee, representing the interests of the stockholders and creditors of the company, deriving his authority not alone from the order of the court appointing him, but from the charter of the company and the statute of the state creating the corporation. To establish their rights as policy holders, the complainants rely upon the provisions of the charter of the company, and, if the courts of Iowa can enforce the provisions of the charter and the rights conferred thereby in one respect, why not in another? The provisions of the charter estop the complainants, who, as policy holders, are bound by its terms from denying the right of other policy holders to an equitable participation in the assets of the company; and they cannot object to the enforcement of the method provided by the charter and laws of Connecticut, forming part thereof, for securing such equitable distribution in case of the dissolution of the corporation. An essential feature of such method is the appointment of a receiver, with power to take possession of all the assets of the company, wherever situated, and, when such receiver has been duly appointed in the mode provided for in the charter, the policy holders cannot deny his authority." See, also, Hoyt v. Thompson, 5 N. Y. 320; Gilman v. Ketcham, 84 Wis. 60, 54 N. W. 395, 23 L. R. A. 52, 36 Am. St. Rep. 899; Freeholders of Middlesex Co. v. State Bank at New Brunswick, 29 N. J. Eq. 268.

If the courts were right in the cases of Relfe v. Rundle and Parsons et al. v. Insurance Co., supra, in holding that the policy holders of insurance corporations are bound by the provisions of the statute under which they are incorporated, and that the policy holders of such corporations could not be heard to question the authority of such receiver, how much more binding must such provisions be upon the corporation itself; certainly in the case at bar, as in the above cases, it should be held that the receiver

became, under the statute, the successor to the corporation and as such entitled to full recognition as such in Nebraska and in every state where such corporation may have had interests.

But even conceding that the above decisions of the federal courts were wrong, or that, though correct, they do not apply to the facts of this case, and that the Nebraska statute did not become a part of the charter of the bank, and that therefore such statute had no extraterritorial effect, yet it must be admitted that the corporation itself is bound by such statute, and that as soon as the receiver was appointed such corporation and its officers were impliedly forbidden to do any act. They were as effectually forbidden by such statute as they could have been by a decree of a court having jurisdiction over them. If the corporation or its officers had come into any court of this state and sought recognition to be allowed to act in the name of, or in behalf of, such corporation, no court would grant the request. It must at all times be kept in mind that we are now simply determining what has become of the title to this land as between the bank and appellant—a Nebraska corporation and a purchaser at a sale held under the laws of Nebraska. The respondent is not claiming under or through the bank either as a creditor or otherwise. So far as he was concerned, at the time he brought this action, there was outstanding the original fee title derived from the United States government, and it was absolutely immaterial to him who held the same. The corporation, which certainly is bound by the laws of Nebraska, could not be heard to question the title of appellant, and, therefore, under the rule of comity between states, it must be held that appellant became vested with the bank's title to the land in question. Gilman v. Ketcham, supra; Hoyt v. Thompson, supra.

Respondent brought this action to have his title declared superior to the original fee title. Such title must rest in some person or corporation. If it did not pass to the receiver and from him to appellant, what would become of it upon the final dissolution of the corporation? It seems to us that under the Nebraska statute—which statute was binding upon the corporation even if it

did not become a part of the charter of the corporation, and thus binding on the courts of this state—it must be held that the receiver became successor of the corporation and as such vested with legal title to all its property, which title passed to appellant.

Respondent contends that, even admitting that the receiver had the title to this land and could convey same, yet no title could pass under the receiver's deed, as it was made at a time when there was a statute declaring invalid any conveyance of land when, at time of conveyance, the lands were in the open and notorious possession of some person not a party to such transfer. It is true the receiver's deed is dated a few days later than the date when respondent's grantor entered into possession; but, as appears from the receiver's report, the receiver's sale was prior to such possession, and the deed when executed and delivered related back to and took effect as of the date of sale. Such statute could never have been intended to render void a deed executed under such circumstances. Moreover, conceding the deed void: Here is a contract of purchase and sale and the purchase price paid thereon. Certainly the appellant holds an equitable title good as against the corporation if it were in existence.

Did respondent have any more than bare color of title? The tax deed under which his grantor first took possession was void on its face for the reason that it appeared therefrom that the county of Pennington purchased the land at public auction. Reckitt v. Knight, 16 S. D. 395, 92 N. W. 1077. Respondent's grantor went into possession of these lands under such tax deed in October, 1897, and was in possession claiming under such deed on November 6, 1901, when he bought said premises at tax sale under the "Scavenger" act (Laws 1901, c. 51). It therefore became the duty of such party so in possession to pay the tax and not allow the same to go to sale, and his purchase on such sale must be treated as a mere payment of the tax. Wambole v. Foote, 2 Dak. 1, 2 N. W. 239. Furthermore, no proof of service of notice of the maturity of certificate of sale under the "Scavenger" act was ever filed in the office of the clerk of circuit court of Pennington county, until some five years after the expiration of year for re-

demption from said sale and after this action was commenced, and section 15 of such act provides that the title shall not pass until the filing of such proof, which proof must be filed before the maturity of such certificate. King v. Lane, 21 S. D. 101, 110 N. W. 37; Nicol v. Sherman, 21 S. D. 189, 110 N. W. 777.

It therefore conclusively appears that respondent was in possession of said land, when this action was brought, under bare color of title, which possession had not continued for 10 years, nor had there been 10 years' payment of taxes under such color of title. Such color of title with such possession and payment of taxes was not sufficient to cut off the original fee title to said land. The trial court having found that appellant acquired no title under the receiver's sale, and such holding having been assigned as error, it follows that the judgment of the trial court herein must be reversed.

The court having found fully as to the taxes paid and improvements made by respondent, and no question being made as to the correctness of such findings except as to the finding that the value of fence built was $1,280, and it being agreed that this was an error and should be $560, there appears no reason why final judgment should not enter in accordance with this opinion.

The judgment of the trial court is therefore reversed.