The FIRST NATIONAL BANK OF EDEN, a corporation; Stanley Boe; and Jeannie R. Anderson, Plaintiffs and Appellants,

v.

Herman MEYER, (also known as Herman C. Meyer); Gladys F. Meyer; Gordon Phillips, doing business as Phillips Oil Co.; St. Luke's Midland Regional Medical Center, formerly St. Luke's Hospital, a corporation, doing business as Marshall County Medical Clinic, formerly Britton Medical Center; South Dakota Farmers Oil Co., Inc., a corporation; Suther Oil Co., Inc., a corporation; and Marshall County, a political subdivision of the State of South Dakota, Defendants and Appellees.

No. 17345.

Supreme Court of South Dakota.

Argued May 22, 1991.

Decided Oct. 9, 1991.

---

Carlyle E. Richards of Carlyle E. Richards, P.C., Aberdeen, for plaintiffs and appellants.

Danny R. Smeins, Britton, for defendants and appellees South Dakota Farmers Oil Co. and Suther Oil Co.

MILLER, Chief Justice.

This is an intermediate appeal by First National Bank of Eden (Bank) from the trial court's denial of its motion for summary judgment. The summary judgment motion was in a quiet title action wherein Bank sought to quiet title to real property it acquired as a result of a tax deed proceeding. The trial court held that the tax deed notice statute was unconstitutional. We affirm.

## FACTS

This legal controversy centers around three quarter sections of land in Marshall County, South Dakota, previously owned by Herman and Gladys Meyer.

In the spring of 1982, appellees South Dakota Farmers Oil Company and Suther Oil Company obtained money judgments against Herman Meyer and the same were appropriately docketed with the Marshall County Clerk of Courts. Under the provisions of SDCL 15–6–7, these judgments became a lien on all of Meyers' real estate, except their homestead (homestead rights are not at issue in this action).

In November, 1982, Bank loaned money to Meyers who executed a mortgage on the three quarter sections. This mortgage was properly filed and recorded.

Meyers did not pay the real estate taxes on said property for the years 1980—1985. Under the provisions of SDCL ch. 10–23, all property for which the taxes are delinquent is sold at an annual public auction. When there are no bidders on the property, the county treasurer bids off the property in the name of the county in the amount of the taxes, penalty, interest, etc. (SDCL 10–23–24) and issues a certificate to the county (SDCL 10–23–25). Apparently, there were no bidders on Meyers' property for the years in question, since the county held the tax certificate for those years.[1]

When Meyers' mortgage went into default, Bank started a foreclosure action and then discovered that it was not the first lienholder (even though it had constructive notice of the prior judgments by virtue of their docketing). Apparently, they were junior to eight prior judgments, including appellees. When it realized this, it "backed off" its foreclosure. The President of Bank then contacted Mr. Richards to see if there was anything they could do about recouping the loan through tax process, or a tax deed.[2]

On January 15, 1986, Bank obtained an assignment of the county treasurer's certificate covering delinquent real estate taxes assessed against Meyers' land, and paid the taxes.[3] On January 26, 1986, Bank com-

---

1. As part of the annual tax sale proceedings, the Marshall County Treasurer published and posted notice of the pending sale and sent timely notice by mail to Meyers.

2. Mr. Richards was not Bank's attorney when the Bank entered into the mortgage with Mr. Meyer.

3. This was done pursuant to SDCL 10–23–28, which provides:
 If any person is desirous of purchasing the interest of the county in the real property acquired by reason of the county treasurer buying the same for the county, he may do so by paying to the treasurer the amount of the taxes, penalty, interest, and costs of sale and transfer and all unpaid or subsequent taxes as specified in § 10–23–27, up to the date he so pays, and thereupon the treasurer shall issue a tax receipt and duplicate for such taxes, penalty, interest, and costs, which shall be entered upon his cashbook as other tax receipts; and he shall assign and deliver to such purchaser the certificate of purchase held by the county for such real property, which assignment and transfer shall convey unto such purchaser all the rights of the county, both legal and equitable, in and to such real property as much so as if he had been the original purchaser at the tax sale.

menced proceedings to procure a tax deed on Meyers' real property. Pursuant to statute, Bank served written notice of its intent to take a tax deed on Meyers, Duane Johnson (the person in possession of the land), Marshall County, and itself. However, no notice, actual or constructive, was made upon judgment lienholders.[4] Ultimately, the Marshall County Treasurer issued Bank a tax deed which was duly recorded.

Bank, which ultimately sold the property under a contract for deed, commenced a quiet title action and named as defendants the Meyers and various judgment lienholders. This was the first notice that appellees received of the tax deed proceedings. Appellees answered the quiet title complaint, asserted the priority of their judgment liens and alleged that the tax deed proceeding was constitutionally deficient because of failure of Bank to give them notice.[5] Bank moved for summary judgment against appellees (the only answering defendants). The trial court, in denying said motion, held that South Dakota's stat-utory scheme for taking tax deeds was constitutionally deficient because it failed to provide notice to judgment lienholders.[6] We agree and thus affirm.

## DECISION

▪ Appellees' claims would normally be time-barred from challenging the validity of these tax deed proceedings under SDCL 10–25–44.[7] However, they received no notice until they were joined in the quiet title action, long after the statute of limitations would have barred their claim. For reasons stated herein, appellees were entitled to notice of the tax deed proceedings. We have held that failure to give notice of tax deed proceedings to those entitled thereto is a jurisdictional defect which tolls the statute of limitations until the notice is received. *McQuown v. Field*, 74 S.D. 200, 50 N.W.2d 358 (1951); *Cain v. Ehrler*, 36 S.D. 127, 153 N.W. 941 (1915). Therefore, we reach the merits.

1. *Notice:*

▪ In *Mullane v. Central Hanover Bank & Tr. Co.*, 339 U.S. 306, 70 S.Ct. 652,

---

4. As will be noted later, there was no statutory requirement for them to give notice to judgment creditors.

5. The South Dakota Attorney General was notified of the challenge of the constitutionality of the notice statute but declined to appear in the action. SDCL 15–6–24(c) and *Sharp v. Sharp*, 422 N.W.2d 443 (S.D.1988).

6. It should be noted that South Dakota has a "request notice" provision. (It was enacted in 1984, one year after *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), possibly in reaction thereto.) SDCL 10–23–2.2 provides, in pertinent part:

> If any of the following persons has annually, on or before November fifteenth, on a form prescribed by the department of revenue:
> (1) Requested that a notice of sale of the real property be sent to him; and
> (2) Paid a three dollar fee to the county treasurer to cover the cost of sending the notice, the county treasurer shall, in addition to the notice required by § 10–23–2, send the notice of sale ... to *any other person who has or claims an interest in the real estate.* (Emphasis added.)

In *Mennonite*, 462 U.S. at 793 n. 2, 103 S.Ct. at 2708 n. 2, with reference to a similar statute, the Court stated:

Indian Code § 6–1.1–24–4.2 (1982), added in 1980, provides for notice by certified mail to any mortgagee of real property which is subject to tax sale proceedings, if the mortgagee has annually requested such notice and has agreed to pay a fee, not to exceed $10, to cover the cost of sending notice. Because the events in question in this case occurred before the 1980 amendment, *the constitutionality of the amendment is not before us.* (Emphasis added.)

7. SDCL 10–25–44 provides:

> *No action may be commenced* by the former owner or by any person claiming under him, to recover possession of any real property which has been sold and conveyed by deed for nonpayment of taxes or to avoid such deed, *unless such action is commenced within two years after the recording of such [tax] deed; and no defense may be interposed or maintained* by the former owner, or by any person claiming under him, in any action brought to quiet the title in the grantee in any tax deed, or by any person claiming under such grantee, *in any tax deed issued and delivered by any county treasurer* of any county in this state, *unless such defense is interposed within two years after the recording of such tax deed* in the office of the register of deeds of the county in which the real estate described in such tax deed is located. (Emphasis added.)

94 L.Ed. 865 (1950), the United States Supreme Court, in determining what notice is constitutionally adequate to satisfy due process, stated:

> The fundamental requisite of due process of law is the opportunity to be heard. This right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest.
>
> . . . . .
>
> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.

339 U.S. at 314, 70 S.Ct. at 657, 94 L.Ed. at 873 (citations omitted).

In *Mennonite Board of Missions v. Adams,* 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), the Court held that an Indiana statute which required the county auditor to post notice in the county courthouse of the sale of real property for non-payment of property taxes, and to publish notice once each week for three consecutive weeks, was violative of the due process clause of the Fourteenth Amendment where there was no provision for notice by mail or personal service to mortgagees of the property. The Court determined that constructive notice to a mortgagee who is identified in the public records does not satisfy the due process requirement of *Mullane, supra.*

We hold that known or readily ascertainable judgment lienholders are entitled to the same notice as a mortgagee. *Mennon-*

*ite, supra; Verba v. Ohio Cas. Ins. Co.,* 851 F.2d 811 (6th Cir.1988).

**2.** *SDCL ch. 10–25:*

■ SDCL 10–25–3, at times salient to this appeal, provided:

> The *notice* of intention to take tax deed *shall be served upon the owner of record of the real property so sold, upon the person in possession thereof, and also upon the person in whose name the same is taxed and upon the mortgagee named in any unsatisfied mortgage* then in force upon such real property of record in the office of the register of deeds of the county in which the same is located, and *if any such mortgage shall have been assigned* and the assignment thereof placed upon record in the office of the register of deeds, *then upon such assignee in lieu of the mortgagee named in the mortgage.* (Emphasis added.)

SDCL 10–25–3 did not require that notice be sent to all known or reasonably ascertainable judgment creditors.[8] It did not even provide for notice by publication. (And remember, notice by publication was held to be insufficient in *Mennonite, supra,* and *Tulsa Professional Collection Services v. Pope,* 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988)).

Therefore, under the clear holdings by the United States Supreme Court, this statute (SDCL 10–25–3), in its prior form, was unconstitutional.

**3.** *Prospective Application:* We direct that the foregoing holding be applied prospectively only.

■ When determining whether a case holding should be applied prospectively, the

---

8. In 1991 the legislature appropriately determined to amend this provision. SDCL 10–25–3 now provides:

> The notice of intention to take a tax deed shall be served upon the owner of record of the real property so sold, upon the person in possession thereof, upon the person in whose name the property is taxed, upon the mortgagee named in any unsatisfied mortgage in force upon the real property of record in the office of the register of deeds of the county in which the property is located, and if the mortgage has been assigned and the assignment

thereof placed upon record in the office of the register of deeds, then upon the assignee in lieu of the mortgagee named in the mortgage. *The notice of intention to take a tax deed shall also be served upon any lienholder and other interested person as may appear from the records in the office of the register of deeds, the county treasurer or the clerk of courts.* The county treasurer may obtain any title information necessary to identify persons who appear from the records to be interested in such real property as owners, mortgagees, lienholders or otherwise. (Emphasis added.)

court considers the following factors: (1) the decision to be applied prospectively must establish a new principle of law by either, overruling clear past precedent on which litigants have relied, or, by deciding an issue of first impression whose resolution was not clearly foreseen; (2) the court must weigh the merits and demerits of each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation; and (3) the court must determine whether the decision would produce substantial inequitable results if applied retroactively. *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971); *Fisher v. Sears, Roebuck & Company*, 88 S.D. 1, 214 N.W.2d 85 (1974).

■ In *Fisher*, we noted that "[i]n *Great Northern R. Co. v. Sunburst Oil & Ref. Co.*, 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 [(1932) ], the United States Supreme Court declared that it was within the inherent authority of the highest court of any state to give prospective application to its decisions without offending any constitutional principles." *Fisher*, 88 S.D. at 4, 214 N.W.2d at 87. Therefore, it is within the inherent power of this court to declare, at the time of a decision, whether a case will achieve only prospective application. *Id.*

Considering the factors set forth in *Chevron, supra,* and recognizing that over the past many years several thousand acres of land have been acquired in this state through a good faith compliance with, and reliance upon, tax deed notice procedures, which we now find to be unconstitutional, substantial detriment could occur were this holding to be given retroactive application.

Affirmed.

SABERS and AMUNDSON, JJ., concur.

HENDERSON, J., concurs specially.

WUEST, J., dissents.

* Many counties reinvested title to the landowners

HENDERSON, Justice (special concurrence).

Genius may be described as a deep capacity for taking pains with the subject at hand. Out of a great respect for lawyers, whose industry often knows no bounds, and often attains genius, I write this special concurrence, trusting that it will, somehow, someway, allay any efforts to circumvent in the future this decision concerning tax deeds. It is hoped by this writer that our decision, announced today, shall not spawn an eruption, either now, or in the future, of litigation and/or quiet title actions generally attacking title acquired by tax deeds or tax deed proceedings by my fellow South Dakotans.

Perhaps I should not fear so. Having been raised in the "Dirty 30's," and witnessed a mass exodus off the farms in Hand County, with many of our friends in the county having lost their land by taxes they could not pay, and later reacquired this land by and through tax sale proceedings and tax deeds, I confess a fear.* Franklin Delano Roosevelt in his First Inaugural Address on March 4, 1933, tried to quell the sadness and fear of this drought stricken and broke Nation with these words: "The only thing we have to fear is fear itself." Valiantly he tried to save the family farms which were being lost to taxes—by the millions—and then placed in government ownership. He then aided us, as our leader, by the WPA, CCC, relief and many public work projects.

Mr. Chief Justice has obtained the necessary votes to give this decision prospective application. It is apparent that it is the considered judgment of this august body, by this decision declaring prospective application, that lawyers in South Dakota should not reach back, to find a boogeyman, i.e., a technical flaw, in tax sale proceedings and tax deeds to create "substantial inequitable results if applied retroactively," as expressed by this Court. (Citing *Chevron* and *Fisher* ). In *Beitelspacher v. Winther*, 447 N.W.2d 347, 353 (S.D.1989) written as a majority opinion by this special writer, this Court approved the *Fisher* case

if the landowner would simply pay the taxes.

and cited a case therein, Vogt v. Billion, 405 N.W.2d 635 (S.D.1987) for this holding: "The Constitution neither prohibits nor requires retrospective effect of judicial decisions."

Very salient facts concerning this appeal: The Bank's tax deed was recorded on April 16, 1986; bank contends that neither the former owner, or anyone claiming through him, could interpose any defense to a quiet title action, after two years, namely April 16, 1988; the bank brought a quiet title action on May 9, 1990, just four years after it obtained a tax deed. There were 240 acres of agricultural land in question. Bank paid $4,680.98 in delinquent real estate taxes and statutory costs. Bank paid to the State of South Dakota the sum of $2,318.76 for its vendor's lien on the real estate. Total outlay by the Bank: $6,999.74 investment. Less than four months later, on August 1, 1986, Bank sold this property on a Contract for Deed for $60,000.00. On August 4, 1986, the Contract for Deed was recorded. Bank stands to make approximately $53,000.26 in profit, if it prevails in this appeal, for holding the tax deed for 107 days, from the date of acquiring title. No notice was given to the appellee lienholders, who had judgments. These judgments constitute a lien under SDCL 15–16–7 "... for ten years from the time of docketing the same where it was rendered, and no judgment shall become a lien on real property as herein provided unless it be docketed in the county where the land is situated." There is no question that appellee lienholders had liens perfected. South Dakota Farmer's Oil had a judgment for $85.50 and Suther Oil Co., Inc. had a judgment docketed for $3,525.07.

In the History of South Dakota, Third Edition Revised, June, 1975, by Dr. Herbert S. Schell, a renowned historian and esteemed professor at the University of South Dakota, who was one of my professors at that school, expressed in his textbook:

A concomitant of the hard times was a high incidence of tax delinquency. In 1935 nearly 19 per cent of the land was tax delinquent. By the time the depression had run its course the tax delinquency rate was ranging from 25 to 50 per cent in a number of counties, and title to large acreages had changed hands through tax deeds. In 1938 four counties in the northwestern section of the state had possession of over a million acres, title to which was acquired through county tax deeds.

From the archives of the South Dakota Historical Society, now located at the Cultural Heritage Center, in Pierre, I located a study by the South Dakota State Planning Board, Published by the Central Office of said Board at Brookings (site of one of our state colleges). This is denominated *Tax Delinquency Status of Farm Land in South Dakota* as of January 1, 1935; however, the date of the publication is July 1, 1937. General tenor of this article is to reflect, factually, upon the tremendous number of acres of tax delinquency in this state, and on page 7 thereof, we find:

Tax delinquency increased rapidly from 1928 to 1932 in this state. An indication of this trend is apparent in the following. Properties delinquent in 40 counties in South Dakota increased from 13,688 in 1928 to 45,122 in 1932 an increase of 230 per cent. Acreage involved in this delinquency increased 247 per cent and the amount of money involved increased 158 per cent. The reason the amount of delinquency did not increase to the degree the number and acreage increased was that the tax rate per acre had decreased very rapidly from 45 cents in 1928 to 32 cents in 1932.

One of the charts herein reveals that, of all the taxable lands in South Dakota, as of January 1, 1935, 26% thereof was subject to tax deed. It is instructive that the tax delinquencies for one year or more on January 1, 1935, contains as an example, 411,-753 acres in Hughes County, county of our State Capital. Brown County had delinquencies of over 1 million acres, to wit: 1,047,033 acres. Three other counties had over 1 million acres in tax peril, through tax delinquencies. There were millions of acres in this state which were tax delinquent; and there were millions of acres taken by tax deed.

Can we not conclude that, to this very day, there are millions of acres of land in this State which were acquired by tax deed? The answer is: A resounding yes.

So, now that the Supreme Court has declared unconstitutional the Notice of Intention to Take Tax Deed statute, i.e., SDCL 10–25–3, what effect does this have upon the millions of acres of land obtained by tax deed in the 1930's, 1940's, 1950's, 1960's, 1970's, and 1980's? First of all, the 1991 Legislative assembly has cured the notice defect. Thenceforth, all ascertainable creditors, via an amendment, must be notified (such as these appellees). By making the application of this decision prospective, a legal mind would believe that this ends it: The unconstitutional statute, hereafter, cannot be asserted as a weapon against a tax deed. However, the genius of lawyers, which I first alluded to, might well surface from the legal catacombs of cases decided in the early days of this Court. A case of antiquity is cited by the majority writer, namely, *Cain*, decided over 75 years ago, and *McQuown*, decided in 1951. Such decisions, tied in with our present decision, could trigger the genius to try to upset the applecart on tax deed titles throughout the state, taken over decades. "Out of this nettle, danger, we pluck this flower, safety." William Shakespeare: 1 Henry IV, II.iii. This is what I am trying to do; to pluck out of the laws of this state and its decisions, some safety from the nettle of danger. Safety, in land titles, is a must; for without it, the underpinning is so shaky, no peace of mind can exist, and calamity can befall those who have long believed that their title was perfectly sound.

With the above background, I first call to the attention of the Bar and Bench, SDCL 15–3–15, the subject of which is the "Vesting of title and payment of taxes for ten years under color of title." It expresses:

Every person in the *actual possession* of lands or tenements *under claim and color of title* made *in good faith,* and *who shall have continued for ten successive years in such possession, and* shall also *during said time* have *paid all taxes legally assessed on such lands* or tenements, *shall be held and adjudged to be* the *legal owner* of said lands or tenements to the extent and according to the purport of his paper title. All *persons holding under such possession by purchase, devise,* or *descent before said ten years shall have expired, and who shall have continued such possession* and *payment of taxes* as aforesaid *so as to complete said term of ten years* of *such possession and payment of taxes, shall be entitled to the benefit* of this section. (emphasis supplied mine).

A careful reader will detect that this statute has two parts to it and I shall not unduly elaborate upon them. The key elements are color of title, possession for ten years, and payment of taxes for ten years. A tax deed held in good faith constitutes color of title. *Murphy v. Pierce,* 17 S.D. 207, 95 N.W. 925 (1903). Bad faith is never presumed; one who alleges that possession was under claim and color of title has the burden to prove bad faith. *Andree v. Andree,* 291 N.W.2d 788 (S.D.1980).

Conceded that the Supreme Court of this state has declared SDCL 10–25–3 unconstitutional in its prior form, certainly SDCL 15–3–15 has not been so declared. It is a viable statute, still on the books, and a haven for thousands of South Dakotans who own farms, ranches, or homes via SDCL 15–3–15. I likewise point out that SDCL 10–25–44 has not been struck down by this decision. Note that the language in the majority opinion, in its first two sentences under DECISION, indicates: "Appellee's claims would *normally* be time-barred from challenging the validity of these tax proceedings under SDCL 10–25–44." Immediately it follows with the sentence: "*However,* they (the creditors) received *no notice* until they were joined in the quiet title action, long after the statute of limitations would have barred their claim." *Some* notice is different than *no notice.* Certainly, the Bank in this case did not fulfill the ten year successive years in possession nor did it ever pay taxes on this land for ten years. *See,* salient facts, *supra,* this writing.

Concerning the constitutionality of SDCL 15-3-15 and SDCL 10-25-44, a few cases are worthy of note:

*Sedlacek v. S.D. Teener Baseball Program,* 437 N.W.2d 866 (S.D.1989).

Quote: Strong presumption that laws enacted by legislature are constitutional is rebutted only when it clearly, palpably, and plainly appears that statute violates constitutional provision.

Quote: Party challenging constitutionality of statute bears burden of proving beyond a reasonable doubt that statute violates state or federal constitutional provision.

*Homestake Min. Co. v. Johnson,* 374 N.W.2d 357 (S.D.1985).

Quote: When considering a statute's constitutionality, it is presumed valid, and should be upheld unless clearly and unmistakably unconstitutional.

*Simpson v. Tobin,* 367 N.W.2d 757 (S.D.1985).

Quote: There is strong presumption in favor of constitutionality of statute, and such presumption is only rebutted when it appears clearly, palpably and plainly that statute violates provision of State Constitution.

*Meierhenry v. City of Huron,* 354 N.W.2d 171 (S.D.1984).

Quote: Legislative enactment is accorded a presumption in favor of validity and propriety and should not be held unconstitutional by judiciary unless its infringement of constitutional restrictions is so plain and palpable as to admit of no reasonable doubt.

I now cite 38 A.L.R.2d 986, 992 for the general proposition that:

It is a general rule that where a tax deed follows the ordinary form for such deeds, is executed by an official having general authority to make such deeds, and purports by apt words to convey land either described accurately, or so referred to as to permit its accurate identification, it will be color of title to such land under a general statute of limitations, although such deed is absolutely void, for any reason whatever, and although the cause of such invalidity appears upon the face of the deed.

There are two exceptions, however:

The exceptions to this rule are, first, where the tax purchaser is attempting to avail himself of the deed and statute and the evidence is such as to charge him with actual notice, as distinguished from constructive notice, that the deed was bad, and, second, where the statute the operation of which is relied upon gives a special definition of "color of title" stricter than its ordinary meaning and requiring at least prima facie title.

At 993 thereof, it is expressed:

In Colorado, Illinois, South Dakota, and Washington there are statutes which permit rights to be founded upon "color of title" or "claim and color of title" made in "good faith."

In California, Florida, South Dakota, and Wisconsin there are statutes of limitation based upon an entry upon land under "claim" of title, "exclusive" of other right, founding such claim upon a "written instrument," as being a "conveyance" of the property in question, with continuous possession under such "claim" for various periods. Under these statutes the rule seems to be that any invalid tax deed will constitute color of title without reference to the nature of the invalidity, or whether it appears on the face of the deed or by proof aliunde, unless the purchaser received it or took possession in actual bad faith.

The majority opinion has cited *Cain,* a 1914 case in this Court, which is the subject, with many other South Dakota cases on this subject, at 1051 of 38 A.L.R.2d. Tying in SDCL 15-3-15 concerning the "Vesting of title and payment of taxes for ten years under color of title," I submit said A.L.R. discussion of South Dakota law, in its entirety.

The South Dakota cases support the rule that, irrespective of whether a tax deed may be void on its face or through evidence dehors the record, it may be "color of title" if made in "good faith," in support of prescriptive title, under a statute permitting acquirement thereof if the

conditions quoted are present. *Murphy v. Pierce* (1903) 17 SD 207, 95 NW 925; *Jackson v. Bailey* (1905) 19 SD 594, 104 NW 268; *Joy v. Midland State Bank* (1910) 26 SD 244, 128 NW 147, mod on other grounds 28 SD 262, 133 NW 276; *Cain v. Ehrler* (1914) 33 SD 536, 146 NW 694.

The proposition that a void tax deed may constitute color of title in support of prescriptive title, under the statutory provision requiring "color of title" in "good faith," was apparently applied in *Murphy v. Pierce* (1903) 17 SD 207, 95 NW 925, although the land attempted to be conveyed was not subject to taxation by reason of ownership by an Indian, where the court said that the instrument "purported to convey title, and that is sufficient to constitute color of title."

In *Cain v. Ehrler* (1914) 33 SD 536, 146 NW 694, it *was considered that a tax deed which upon its face appeared to be fair, but which actually was void* in the sense that it did not divest the owner of the property of title because of failure of the holder of the tax sale certificate to give the statutory notice of the expiration of the period of redemption and to make and file a proper return thereof, *may nevertheless constitute color of title in good faith as a basis for the founding of legal title under a ten-year statute of limitations defining title by adverse possession.*

A tax deed which is void on its face because it shows that the grantor was a county which purchased it at public auction may nevertheless constitute color of title in support of title by adverse possession, and entitle the possessor of land thereunder to succeed in an action to quiet title if he shows that the requirements of adverse possession are fulfilled and that the former title has been extinguished. *Joy v. Midland State Bank* (1910) 26 SD 244, 128 NW 147, mod on other grounds, 28 SD 262, 133 NW 276.

In *Jackson v. Bailey* (1905) 19 SD 594, 104 NW 268, an action to quiet title based on a tax deed regular on its face and recorded for three years, *although there was a jurisdictional defect con-sisting of an inadequate description of the property on the assessment roll (the recording act not curing jurisdictional defects), the court recognized that the acquirement of rights, if there had been possession for the statutory period under the statute conferring title upon one having "color of title" and paying the taxes in "good faith" for ten successive years, might not have been impossible had there been available sufficient information or admissible evidence to locate and identify the property.* (emphasis supplied mine) (footnotes omitted).

My legal thesis is: A compliance under either of the two parts to SDCL 15–3–15, by meeting the three key elements which I have set forth above, permits every owner of real estate in South Dakota, holding title by tax deed, to indulge in the safe belief that, in the terms of the statute, he, she, or they "... shall be held and adjudged to be the legal owner of said lands...."

Peace, brother. Let there be peace in the valley and peace in the land.

WUEST, Justice (dissenting).

I respectfully dissent. I would overrule *McQuown v. Field*, 74 S.D. 200, 50 N.W.2d 358 (1951); *Cain v. Ehrler*, 36 S.D. 127, 153 N.W. 941 (1915) and cases cited therein. *Cain* was a 3–2 decision decided by this court on rehearing. Since that time, this court has followed it as precedent. In my opinion, the dissent is more rational than the majority opinion. The recording of a tax deed is notice to the world including any interested persons. Two years after the recording of a tax deed is adequate time for any interested persons to pursue any rights they may have. In providing stability to real estate titles and aiding tax collection, the Legislature did not violate anyone's due process rights when they enacted SDCL 10–25–44. These are different days and different times. It is time to dump the old line of cases spawned by *Cain* and its progeny.

Although I would not reach the other issues in this case, I do not disagree with the majority's treatment of them. Further, I share the concerns of Justice Henderson

regarding the stability of real estate titles as a result of the majority opinion.